TALLEY v. TIGRETT (INTERNATIONAL VEGETABLE OIL CO., Garnishee).—69 S. W. (2d) 243.

Western Section. November 25, 1933.

Petition for Certiorari denied by Supreme Court, February 24, 1934.

Bates, Shea & Frazer, of Memphis, for appellant.
John R. Walker, Jr., of Memphis, for appellee.

SENTER, J. This appeal is from a decree against the garnishee, International Vegetable Oil Company. On November 18, 1932, a final decree was entered in the cause of Thurman Talley v. A. K. Tigrett, in favor of complainant, Talley, and against defendant, Tigrett, for the sum of $507.15, and the costs of the cause, amounting to $15.60. On January 17, 1933, garnishment was served on the International Vegetable Oil Company, returnable the first Monday in April, 1933. On April 1, 1933, the International Vegetable Oil Company filed its answer, stating: "We are not indebted to A. K. Tigrett, and know of no one owing him." On April 21, 1933, an order was entered in the cause requiring the garnishee to appear through its officers and to submit to an examination in person before the court, and to have all books and records showing its account with A. K. Tigrett. Certain of the officers of the International Vegetable Oil Company testified by deposition, and at the hearing before the chancellor on the answer of the garnishee defendant and the evidence taken with reference to any indebtedness by the International Vegetable Oil Company, garnishee, to A. K. Tigrett, the chancellor rendered a decree against the garnishee, International Vegetable Oil Company, in favor of complainant, Talley, for the sum of $517.40. From this decree the International Vegetable Oil Company prayed and was granted an appeal to this court, and the appeal has been duly perfected and errors assigned.

By the first and second assignments of error, it is said that there

is no evidence to support the decree of the chancellor; and that the decree is against the weight and preponderance of the evidence.

The third assignment is as follows: "The court erred in holding that the writ of garnishment served upon the International Vegetable Oil Company on January 17, 1933, was effective in subjecting the sum of $517.40, or any other sum, to the judgment of Thurman Talley."

The fourth assignment is directed to the holding of the chancellor that on January 10, 1933, the salary of A. K. Tigrett for the month of January, 1933, was credited to him, and said January salary of $562.50 was reached by the garnishment issued and served in this cause.

By the fifth assignment it is said that the court erred in holding that more than seventeen days' salary earned in January, 1933. amounting to $308.40, was reached by the garnishment issued and served in this cause.

By the sixth assignment it is contended that the court erred in not holding that the International Vegetable Oil Company was entitled to offset against any amount which the Company owed A. K. Tigrett the demand note for $650.

And by the seventh assignment it is urged that the court erred in failing to adjudge the costs incident to the garnishment proceedings against complainant.

While the record in this cause contains the entire transcript of the proceedings in the cause of Thurman Talley v. A. K. Tigrett, wherein the decree in favor of Talley and against Tigrett was rendered, however, that decree was not appealed from, and is not questioned on this appeal. The appeal before this court is by the garnishee from the decree rendered against it on the hearing of the garnishment.

It appears that A. K. Tigrett was the president of the International Vegetable Oil Company, a corporation, with its principal office in Memphis. He was paid a salary originally of $625 per month, as president of the garnishee. This had been reduced 10 per cent. His salary is referred to as $7,500 a year, and subsequently reduced 10 per cent. However, it appears that his salary was fixed at $625 per month, which would equal $7,500 per annum. Subsequently the salary was reduced to $562.50 per month, a reduction of 10 per cent, and this was his monthly salary at the time of the garnishment. It appears from the undisputed evidence that on January 1, 1933, the open account of Tigrett showed a credit balance of $390.14. It is further admitted that from January 1, 1933, exclusive of salary, and prior to the return date of the garnishment, there came into the hands of the garnishee funds belonging to Tigrett aggregating $194.50. which showed that the garnishee was entitled to credit Tigrett's account on the books of the company the amount of $584.64, in un-

disputed items. This did not include, however, the January salary for the full month, but only included from January 1 to January 17, or seventeen days in January to the date the garnishment was served.

▮▮ The first question presented by appellant under the assignments of error is whether the garnishment should reach and cover the entire January salary of $562.50, or should it be confined to the seventeen days at the rate of $562.50 per month, which would be $308.46; the garnishment having been served on January 17, 1933. The chancellor held, and so decreed, that the entire month of January salary was reached and covered by the garnishment. This conclusion by the chancellor was based upon the theory that the statement filed as an exhibit which purported to show an itemized statement of the personal account of A. K. Tigrett for the month of January, and wherein the statement on the debit side sets forth various items on various dates in January, 1933, charged to A. K. Tigrett, and at the conclusion of the debit items on the statement appear the credit items, and from which it appears that on January 10 a credit for check of $39.50 was entered, and immediately underneath but undated, with a ditto mark under the word "credit," is entered "salary, January, $562.50." The chancellor construed the salary credit as having been given as of the other credit item immediately above it, dated January 10.

The personal account in the form of statements covering each month, taken from the books of the company, from January 1 to April 30, are filed as exhibits. From these several statements it appears that the debit items for each month, and dated, are first entered on the statements, and then follows the credit items entered on the statements. On all of the statements except January statement, it appears that the credit for salary was dated on the last day of the month. The salary credit for February was dated February 28. The credit for salary for the month of March was dated March 30, and the salary credit for the month of April was dated April 30.

By the evidence of the three officers of the garnishee company it appears that there was not a written contract between A. K. Tigrett and the company, and it also appeared that the salary was payable monthly. It also appears that it was the custom of the company to pay certain bills during each month for Tigrett and to charge the items on his account. This was in effect advancements made by the company to Tigrett, and at the end of each month the account was balanced after giving the account credit for the month's salary. This appears from the evidence of the witnesses, and especially from the several statements covering the period from January 1 until April 30. There is no explanation offered as to why the salary credit for the month of January was not dated. There appeared only two items of credit on the January statement, one dated January 10 for the

sum of $39.50. The January statement also shows that on January 1, 1933, the credit balance of Tigrett was $390.14. That is the first item on the January statement, and is dated January 1, "balance John Burton Tigrett $390.14." On this statement there appears no other items of credit, but the debit items are dated on down through and including January 31. And then follows under the head of credits the item of $39.50 dated January 10, and the item of January salary, $562.50. This statement shows a credit balance on February 1 of $128.43.

The chancellor in the decree sets out his finding of the facts, and finds that on January 1, 1933, there was a credit balance in favor of Tigrett on the books of $390.14, and other items amounting to $194.50, and, by including all of the January salary of $562.50, the aggregate amount of credits was $1,147.34. The chancellor further found that, prior to the date of the service of the garnishment on January 17, 1933, the garnishee had paid items for Tigrett totalling $629.94, leaving a balance of $517.40 due Tigrett by the garnishee at the date of garnishment. There seems to be no difficulty in reconciling this finding by the chancellor with the evidence and statements filed as exhibits, if the entire month of January salary is included. If, however, only the seventeen days' salary in the month of January could be reached, and not the entire month's salary, the credit balance would have been $254.04 in place of the $517.40.

When all the evidence and the statements covering the respective months are considered, and the evident general custom of paying items for Tigrett and charging the same to his account on different dates during the respective months, and then to credit the personal account by the salary on the last day of the month, we cannot escape the conclusion that the learned chancellor was in error in assuming that the salary credit was entered on January 10 because it immediately followed the other credit item dated January 10. The salary credit for that month is not dated at all, either by date or ditto marks, but stands as an undated item on the account. A great deal has been said by appellee in argument at the bar of the court, and in the brief filed, to the effect that there was no regular time for entering the salary credit, and predicates that contention or certain statements contained in the evidence of A. K. Tigrett. However, we think what the witness meant to say, and which is corroborated by the record evidence as well as by other witnesses, is that he was privileged to draw on his salary account at any time during the month, and to have items charged to his account during the month. But we think it clear from all the facts and circumstances that the proper date for entering the salary credit was on the last day of each month, and that it was a mere inadvertence in failing to date the January salary credit, and that it was intended to be dated on the last day of January, in the same way and manner that the salary credits were

entered to Tigrett's personal account on the last day of the other months covered by the several statements made exhibits to the evidence. We are also of the opinion that the various items charged against Tigrett for the month of January, and up to the 17th day of January, the date upon which the garnishment notice was served were merely advances made by the garnishee to the defendant, Tigrett, which was not unusual, and was permissible. Van Vleet v. Stratton, 91 Tenn., 473, 19 S. W., 428. In that case salary paid to an employee by the employer in advance after the service of the garnishment notice was held to be permissible.

The next question made by appellant under the assignments of error is with reference to the right of the garnishee to collect the demand note of $650 before it would be required to account for any balance that it was indebted to defendant, Tigrett, at the time the garnishment notice was served.

It does not appear from the opinion of the chancellor incorporated into the decree that this question was considered by the chancellor. No mention is made in the decree or in the opinion of the chancellor of this demand note for $650, although it was the subject of evidence offered by the garnishee.

The complainant, Talley, examined certain of the officers of the garnishee, International Vegetable Oil Company, who were required to testify by the order of the court. Among the officers whose depositions were taken was A. K. Tigrett. He was not asked either on the original examination by the solicitor for complainant or on cross-examination by the solicitor for the garnishee anything about the $650 demand note. In the brief and argument by appellee the explanation is given that complainant did not know of this $650 demand note at the time of the taking of the deposition of A. K. Tigrett, and that the claim that such a note had been given by Tigrett to the garnishee was developed by the evidence of another one of the officers of the garnishee.

It appears from the evidence of the secretary and treasurer of the garnishee company that A. K. Tigrett executed a demand note payable to the garnishee company on demand for the sum of $650. The note was exhibited, as was also a check drawn in favor of A. K. Tigrett bearing date of November 1, 1932, for the sum of $650. The secretary of the company testified that this was a loan by the company to A. K. Tigrett, and that the books of the company showed that it was entered on the books under date of November 30, 1932. The check bears date of November 1, 1932. The demand note signed by A. K. Tigrett is not dated, and is on a printed form, and is as follows:

"$650.00                          · Memphis, Tenn., ——— 19—

"On demand after date I promise to pay to the order of International Vegetable Oil Co. Six Hundred Fifty 00/100 Dollars.

"Payable, at ———
"Value received
"No. ——— Due ———

"[Signed]   A. K. Tigrett."

It is the contention of appellant that this note was owing by Tigrett to the garnishee company, and had not been paid in whole or in part at the date the garnishment notice was served.

Appellee contends that, if this note was genuine, inasmuch as it did not bear any date, and that no demand had been made upon Tigrett for the payment of the note, it was not due and payable, and hence could not be set off against any indebtedness which the garnishee owed to Tigrett on the date the garnishee notice was served. It is further contended by appellee that this note did not represent a genuine indebtedness by Tigrett to the garnishee company, but was the result of collusion between Tigrett and the garnishee company to defeat the collection of the debt of complainant against Tigrett. In support of this contention, appellee insists that the fact that the check for $650 payable to Tigrett, dated November 1, 1932, was indorsed on the back thereof by A. K. Tigrett, and underneath the indorsement of A. K. Tigrett, appears the indorsement of Ora V. Howton, 610 Cotton Exchange building, and that it also appears that Ora V. Howton was at the time the cashier of the garnishee company, and the address given on the indorsement is the address of the garnishee company, and therefore this check was deposited or collected by the garnishee company, and no amount was actually loaned by the garnishee company to A. K. Tigrett.

The only witness who seemed to have any knowledge of this $650 demand note was R. S. Parker, the secretary and treasurer of the International Vegetable Oil Company. He testified with reference to this demand note as follows:

"Q. 15.   The Company owed A. K. Tigrett $127.97 on January 1, 1933?   A.   In open account.

"Q. 16.   Salary account?   A.   Yes.

"Q. 17.   On January 1, 1933?   A.   Yes, against that he had a debit in notes of $650.

"Q. 18.   Debit in notes of $650?   A.   Yes, sir.   Here is the note.

"Q. 19.   It shows on your books 1932, Nov. 30?   A.   Yes, sir.

"Q. 20.   Loans secured by note $650?   A.   Yes, sir, demand note.

"Q. 21.   A demand note?   A.   Yes, sir.

"Q. 22.   What does that note represent?   A.   Just a loan, as far as I know."

The note was then exhibited, or a copy thereof, to the deposition of Parker. He was further asked and answered:

"Q.   Was that money paid to him by check?   A.   Yes."

On the same subject he was further asked and answered:

"Q. 72.   Now, this note has never been paid according to your books, the $650 note, to date?   A.   It has not been paid.

"Q. 73. This note is not dated? A. It is not dated.

"Q. 74. When was this note drawn? A. I could not say.

"Q. 75. Did you draw it? A. No, sir.

"Q. 76. Do you know anything about it? A. I merely know what it shows there. I don't know the date of it.

"Q. 77. When did you first hear of it? A. I don't recall when it was.

"Q. 78. As a matter of fact, wasn't it at the time the garnishment was served on you? A. No, I don't think it was. I think it was prior to January 1, I don't know the exact date.

"Q. 79. What was the $650 note for, what is the occasion for executing this note? A. As far as I know, it is just a loan.

"Q. 80. Did you have anything to do with the making of the loan? A. No, sir.

"Q. 81. Did you ever hear of it before? A. Yes, I heard of it, but I don't know what date. He told me he was going to borrow the money, but I don't know the purpose of it. I just assumed that it was an ordinary loan, because we have done that before.

"Q. 82. Has any demand ever been made on him for the payment of this note? A. No, it has not. Not that I know of.

"Q. 83. As far as you know, the company has never made demand on him for the payment of the loan? A. That is right.

"Q. 85. The note has never been paid? A. That is right.

"Q. 86. Now turn to his account and show me where the check drawn on the company dated November 1, 1932, is, the one for $650, where it is charged to his account. A. It is right here.

"Q. 87. That is an account headed 'Loan account?' A. Yes.

"Q. 88. November 30, loan secured by note, $650? A. Yes."

We find no evidence in the record that impeaches the genuineness and validity of the note in question, except that the check dated November 1 for the sum of $650 is indorsed by Ora V. Howton, who was the cashier of the garnishee company at the time she made the indorsement on the check. However, she did not indorse it as cashier, but did state the business address of the garnishee company underneath her signature. In the absence of any explanation to the contrary, and none seems to have been given, we think it fairly inferable that this check was turned over or delivered by A. K. Tigrett to the cashier of the garnishee company, and for the purpose of having it deposited to the credit of the garnishee company. This matter could have been thoroughly cleared up by the officers of the garnishee company, and especially by the evidence of Ora V. Howton, its cashier, who indorsed the check on the back. Since the garnishee company was claiming that A. K. Tigrett was indebted to it for this note, and had exhibited the note and the check, we think it clearly incumbent upon the garnishee company to have explained why this check was indorsed by A. K. Tigrett and in turn indorsed by Ora V. Howton.

There is no explanation offered. The garnishee company did not introduce Miss Howton, its cashier, to explain her indorsement on the check. This was evidence solely in the possession of the garnishee company, and, if this check had not been deposited to the account of the garnishee company, it ·was certainly within the power of the garnishee company to show that fact. It had all the evidence of the transaction in its possession. Mr. Parker did not seem to have any personal knowledge of the transaction.

Appellant cites and relies upon numerous authorities in support of the contention made that the garnishee would be discharged where it appears that the judgment debtor was indebted to the garnishee at the time the garnishment notice was served, and that the liability of the garnishee cannot be arrived at by surmise and inference, but only from direct admissions or conclusions necessarily following therefrom. Mayor, etc., of City of Nashville v. Potomac Ins. Co., 2 Baxt. (61 Tenn.), 296; Arledge v. White, 1 Head (38 Tenn.), 241; Fay v. Reager, 2 Sneed (34 Tenn.), 200; Johnson v. Hoyle, 3 Head (40 Tenn.), 56; Fain, Adm'r, v. Jones, 3 Head (40 Tenn.), 308; Irvine v. Dean, 93 Tenn., 346, 27 S. W., 666. These cases all hold that a creditor cannot subject a fund in the hands of a garnishee and ·due or owing the debtor until any debt due the garnishee from the debtor is satisfied.

If it appeared that the debtor was in fact indebted to the garnishee at the time the garnishment notice was served in an amount in excess of any amount that the garnishee owed to the debtor, the cases cited and relied upon by appellant, as well as the settled rule, would sustain the contention of appellant. However, for the reasons above pointed out, we think that the fact that this check for $650, which was clearly the check given to A. K. Tigrett when the demand note was executed, was indorsed by the cashier of the garnishee company, showing that it was delivered by A. K. Tigrett to the cashier, or to the indorser, Ora V. Howton, who was the cashier of the garnishee company at the time of the transaction, in the absence of any explanation to the contrary, would show that no money or loan was actually given or made by the garnishee company to A. K. Tigrett for the demand note. In this situation and under the facts and circumstances as disclosed by the record, we think that every fair and legitimate inference leads to the inevitable conclusión that A. K. Tigrett was not actually indebted to the garnishee company for the $650 claimed on account of the demand note at the time the garnishment notice was served.

We are of the opinion, however, that under a proper analysis and calculation based upon the facts as disclosed by the record, and especially by the itemized statements filed as exhibits representing the personal ·account of A. K. Tigrett for the months of January, February, March, and April, the garnishee defendant was not indebted

to A. K. Tigrett at the time the garnishment notice was served for the entire salary for the month of January, but only for the seventeen days, as hereinabove set out, and that therefore the decree of the chancellor should be modified to the extent of fixing the indebtedness on the basis of the amount of salary earned by Tigrett up to the 17th day of January, 1933, the date of the serving of the garnishment notice, by allowing the other items as found by the chancellor as items of credit chargeable against the garnishee, and, by allowing the amount of salary earned to January 17, 1933, it would leave the credit balance of $254.04, in place of $517.40 as found and decreed by the chancellor. It results that the assignments of error will be sustained to the extent of reducing the judgment from $517.40 to $254.04, and the decree of the chancellor will be accordingly modified and a decree rendered here in favor of complainant and against the garnishee, International Vegetable Oil Company, and surety on the appeal bond, for that amount, with interest thereon since the date of the decree below. The cost of this appeal will be paid one-half by appellant and sureties on the appeal bond and one-half by appellee.

Anderson and Crownover, JJ., concur.